Could we hear next from the parties in Lawson v. Homernick?  May it please the Court. My name is Jesse Rose. I'm the attorney for the Plaintiff Appellant Iris Lawson and her claims against the defendants in this case. There were four errors committed by the District Court. The first was in determining that Plaintiff's deposition testimony directly contradicted an affidavit submitted in opposition to summary judgment. The second was an error in determining the Plaintiff didn't plead a claim for hostile work environment, which is very clearly delineated within the complaint. The third was shifting the burden of proof in three different claims to Plaintiff and not requiring the defendants to meet any burden on their motion for summary judgment prior to dismissal. And finally, the Court erred by dismissing Plaintiff's claims for constructive discharge without performing any analysis as required by this Court's holdings for claims of constructive discharge. Primarily, the Court found that there was a sham affidavit submitted. In order to do so, this Court has found that the contradictions between deposition testimony The affidavit itself was not challenged as being inauthentic. The question was, was it being used in an inappropriate way to create a sham issue of fact, right? Yes, Your Honor. Sometimes referred to as a sham affidavit. I just want to clarify because the use of the phrase sham affidavit seems confusing to me. I apologize for that, Your Honor. You contradicted the deposition testimony and we have evidence or we have case law that suggests that it can be disregarded. And you say this case doesn't fit within that precedent. Help us out. Yes, Your Honor. The standard for that is that the contradiction has to be unequivocal, inescapable, and unexplained. None of the contradictions cited are even close to that. Second, this Court has found that when a third party submits evidence that supports the claims made in the affidavit, that this alleviates the concerns that are had that this might be a false claim in the affidavit. That happened here. We submitted an affidavit from a third party, John Van Ostrand, who supported almost all of plaintiff's allegations in her affidavit. This alleviates any concern that this is a sham. Third, this Court has consistently looked at the extent of questioning during deposition when determining whether the testimony during deposition was elicited properly to make sure that a plaintiff has the opportunity to testify. In this case, the deposition lasted a mere 2 hours and 41 minutes of the 7 hours permitted. The questions asked were simple. They were relating to very specific instances, and then those answers were taken and applied very broadly. The first contradiction... And had an opportunity to correct her affidavit, didn't she? Her deposition. Yes, Your Honor, but the questions asked didn't relate to the way that the answers were used. The first contradiction they claim is because she said she was never demoted, that she couldn't also testify that she was given different and lesser job assignments. No, her job title never changed. Her salary did not change, but she was required to work at the front desk. She was required to work additional hours. Her job duties changed, but she wasn't demoted. Simply saying I wasn't demoted doesn't mean she didn't have different job duties. Those are two different questions. This isn't an inescapable or unexplained... Did her pay change? Her pay did not change, but her hours changed so that she was required to work 10 to 20 additional hours every week. And if she's working the front desk every day, then that is a different job title. And, in fact, if you look at Mr. VanOstrand's affidavit... Different title, you're saying? She didn't have a different title, but she was performing the work that would be required by somebody under a different title. I thought you said a different title. I apologize. That's not an actual contradiction at all. It's semantics. The second contradiction that the defendants claim is they claim the plaintiff never complained to Ms. Hominuk. However, if you look at the questioning, defense counsel was asking about a specific conversation that was had. Ms. Lawson, when she returned from FMLA leave in February of 2013, she overheard a conversation between her coworkers where they were talking about why she was out on leave. Her coworker told her, yes, Mr. Fabrizio, who's a manager, told me that you were out because you were severely depressed. They were discussing her medical condition, and that was the only conversation that defense counsel asked about. He never said, he asked, did you complain to Ms. Hominuk about this? She said, no, I didn't. He never said, did you complain about any of the insults? Did you complain about how your subordinates called you crazy every day when you came into work, made comments about your mental health every day or almost every day from that time when she got back until she resigned? He never asked that question. And in her affidavit, she says, I didn't complain until five months later. Five months later, after enduring daily harassment, she finally did complain to Ms. Hominuk. These are different situations. They're talking about a single conversation in the testimony cited by defendants, and then defendants never followed up and said, well, did you ever complain about something else? Did you ever hear anyone make a comment about you that was derogatory based on your mental health? Never asked the question. Only asked, did you ever hear someone have a conversation about your medical records? But the suggestion is that, you know, it's called discovery. It's an opportunity to discover what the plaintiff's claims are, that when a question like that is asked, the full answer would be many times, and then to recount the many times. Instead, her deposition testimony suggests one time, and her affidavit suggests multiple times, and that that was the contradiction. Why is that not the right way to look at it? I don't think that it meets the high standard that the Court has set to find that this is a false statement. It's not unequivocal. It's not unexplained. Further, those allegations of the comments that were made to her were very clearly and explicitly pled in the complaint. Defense counsel was fully on notice that this was something that she was claiming happened. We described it multiple times. In fact, they got the first letter five months before she resigned, when we said the reason she's complaining here is because every day she goes into work and these people call her crazy and nobody will stop it. Well, you know, what she said in her affidavit was that workers laughed at her and called her derogatory names, among them the cuckoo for Cocoa Puffs line. That is what she testified about in her deposition. It suggests that she didn't really give any more explanation at her affidavit than in her deposition, other than to say that it happened repeatedly. Am I missing something there? I mean, she... And she didn't say that it happened repeatedly when she was asked about whether she heard such conversations in her deposition. That's the problem, is that the content of the derogatory comments stays the same in both, but the number changes. Well, Your Honor, the questions in specifically that part of her deposition that counsel was asking about were in relation. If you step back two pages, it's only about a single conversation when she's told that Mr. Fabrizio has told all her coworkers that she was out on leave because she was severely depressed. He does not say any other comments about something else. He doesn't say were there any insults. That portion of the questioning only related to that one conversation when they were actually explicitly discussing her medical health records. That is very different than an insult. And while you're correct, Your Honor, that someone could interpret that to be, well, did they insult you? Did they make comments that were derogatory because of your mental health records? Sure, but that's not the type of contradiction that this court has required in the past to show that those allegations must be dismissed or not considered after an affidavit is submitted. The last contradiction relates to her resignation. She testified that she voluntarily resigned and that she did so to start a daycare center. However, there was no question about why she did it at that time, whether she had any preparation, what prompted her to make this decision, and that's the entire claim for constructive discharge. And I'll get to that later. There was a contradiction also about whether she was locked out of the office that the computer was in and how many hours a day that she was actually locked out and whether she may have been locked out, it seemed in tension with her affidavit, that her testimony said, well, sometimes the person may have been on a telephone call and it wasn't that she was directed not to use the office or she was inferring that she had been locked out on a couple of occasions as opposed to that this was a deliberately done act. Your Honor, she testified that she was locked out at least five times and then counsel asked, well, how about ten times? And she said, I don't remember the exact number, all I know. She said she felt like she was being locked out. And then she testified she found that the manager's office door was locked on only a handful of occasions and that on those occasions the door might have been locked because her supervisor was on a phone call or needed privacy. It didn't seem quite the way it was depicted elsewhere. Your Honor, you're correct that this is unclear, but I don't believe it's unclear because the facts are unclear to Ms. Lewis. It's unclear because there was no follow-up questioning to find out if she was told not to come in. If she was told you have to stay down there, you're not allowed in the manager's office until after. She said she made no efforts to gain entry until the supervisor left. Now, that's the kind of question and answer where, you know, I tried to gain entry but I was told not to or whatever. Instead, she testified that she made no efforts to gain entry until the supervisor left. So how can you now posit evidence that is to the contrary to that? Your Honor, frankly, I'm not sure how that would affect the analysis. I think the question would be are other people excluded? It goes to whether or not she suffered an adverse employment action. Well, Your Honor, if she's required at that point, if she's the only one who's locked out, if she's asked to now work nothing but at the front desk, which is an hourly employee's duty, should we have testimony from her coworker? Mr. VanOstrander said that everybody understood from then on. There's no evidence that she was instructed to remain at the front counter. Her testimony was she would just come in and go to the counter without any instruction. That was the defendant's conclusion. No, that's a — she stated that at page 204 of the appendix. There was no question at any point during the deposition of someone instructed her to. And, in fact, she said she was assigned to work at the front desk from then on. That's one of the allegations she made. It's clear in the complaint and her affidavit. Where is there evidence to support it now on summary judgment? Her own testimony is that she would just come in and go to the counter without instruction. I didn't see that in the deposition, Your Honor. I heard that she testified that she would just go to the front desk and do her job, but there was no question of why she went to the front desk. If she was assigned or told she had to. Is there also a tension between your claim that she was relieved of managerial duties and your claim that she worked late because she had to finish the managerial assignments that she had? Your Honor, it goes to the consideration on plaintiff's labor law claims as to whether she's — But there's tension between that. You're saying she was no longer a manager for purposes of trying to avoid her being an exempt employee, and yet you're saying she had to work longer because she had these managerial responsibilities that she couldn't get into the office to perform. So that suggests that she remained a manager. I'm having trouble reconciling some parts of your argument with the record. What am I missing? Well, Your Honor, it goes to — and if this had been briefed, which it was not, because the entirety of defendant's motion is that plaintiff was always a manager throughout, and it ignores the fact that in January of 2014, after we sent the letter to defendants, her time worked changed. So now she was required to work overtime. Previously, she didn't have to work very many hours, over 40 every week. Now she's required to work between 50 and 60, 65 hours. That's a lot of overtime. That's a lot of overtime. Previous to that, there's almost no overtime. All right. You're well past your time. Do you want to use your two minutes, or do you want to save them for rebuttal? Well, I'd like to save them, but I would like to quickly address just the hostile work . . . No. Your time's up. Okay. We'll give you rebuttal time. Thank you. Thank you, Your Honor. Good morning. Michael Weber for Ava's Budget. May it please the Court. Iris Lawson worked for Ava's Budget for about 12 years. She was promoted to senior operations manager. She was a supervisor of 20 individuals, 10 to 15 hourly employees. Her claims have no merit, and in her deposition, she was asked very broad questions. What facts do you have to support your allegations? Wide open. Probably 10 times, she was asked those questions, and she gave very clear answers. And, those answers do not support a claim of either disability discrimination, or FMLA retaliation, or any violation of any federal or state law. And, it was clear in her testimony, and I think that's why Judge Daniels granted summary judgment and denied the motion to reconsider. There was no trick question here. There was a very broad, open-ended, what facts do you have to support your claims? No limitation, no restriction, no time, no trick effort. Just let me know what you have to support your claims. And, she gave it, and there were no bases. She resigned to start a child care center. She had been working on it for a long time. In fact, her supervisor helped her reschedule her time so she could take classes to open a child care center. How far in advance of her departure did that happen? I'm sorry, Your Honor? How far in advance of her resignation did that happen, that she was, her schedule was modified with the assistance of her supervisor so that she could get the certification? I think it was during the two-year period prior to her resignation. It was an extensive period. Relatively, yes. It took a number of hours that she had to go after work to take these classes. Because I take it, what she's been arguing is that she saw that she was in a hostile work environment, so she had to make alternative plans, but the fact that she made plans shouldn't undercut her claim that she was, in fact, constructively discharged. She'd been working on this for a while, and Trish, her supervisor, coordinated her schedule so she could take those classes. It was well known that she wanted to eventually start this child care center, and in her resignation letter, she thanked Avis Budget for the 12 years she had worked there. And it was in, I think, two months after she left, she started the child care center. So that was in the works for some time. So I think that the record is clear that there is no discrimination here, and certainly she didn't complain. Her deposition testimony is clear. She did not complain to any supervisor about any mistreatment. Did her job responsibilities change at all when she returned from FMLA leave? You've heard her counsel say that she was directed to work at the counter and that she was given more lower-level tasks, even though her title and her salary didn't change. There's nothing in the record that shows that there's any change. As a manager on occasion, when you're an operations manager for Avis Budget, you on occasion are at the front desk both working and supervising. She said it wasn't just on occasion. She said that that was her regular day. It was consistent with her prior work before she came back from leave. She says it wasn't. I understand that, but there's nothing in the record that shows that she worked anything appreciably more when she came back from the leave than before. And it was consistent with a senior operation manager position to do. When you say there's nothing consistent, she testified that it was different. Yes, I understand, but there's no evidence. They had access to all the records, and there's nothing in the record that I'm aware of that showed any appreciable difference from before and after she came. Did the records reveal when someone in her position would be at the desk and when she would be in the office? I wasn't sure I saw that. I don't believe that's in the record, Your Honor. Right. So when you say there's no evidence, there's her testimony, and that we would have to look at this in the light most favorable to her. I'm missing the point of your argument here. I don't believe her supervisor testified that it changed appreciably is what I'm saying. And with regard to the disclosure of medical information, she makes some troubling allegations that the reason for her FMLA leave became known and was used against her in a hostile way. Did you offer any substantive argument for summary judgment on the disclosure of medical information claim? Part of the concern is whether she had an adequate opportunity to respond on summary judgment. No evidence whatsoever that our client released any records whatsoever. No evidence whatsoever. But did you make an argument for summary judgment on that issue, the disclosure of medical records claim? I don't believe we specifically addressed that, but I don't think there's anything in the record that supports any allegation that we in any way released any medical records. Anything. Anything in the record. We usually have taken the view that when a district court grants summary judgment on grounds not raised by a party, that it has to give notice and a reasonable time to respond. It doesn't appear that that happened here on that ground. Now, if I understand your argument, you're saying we can affirm on any grounds supported by the record and in the total absence of any evidence of disclosure of medical records that we could affirm, but she's saying that statements like you're depressed, you're crazy, and all that, are at least enough to suggest that they were talking about her medical condition, which was mental. Our client was not aware. Our supervisors were not aware of what coworkers were saying. That is clear in the record. That was not brought to our attention. Well, when you said it's clear that that's in the record, I thought the plaintiff's argument is that you would infer from that that people with knowledge that her problem was mental had revealed it, and that was the basis for coworkers making these kind of statements. Why should that not be how we view this? Well, there's nothing in the record that indicates that our client, one, released any information, or two, was aware of what was going on within the workplace. Let me try, because I may not be being clear. When the evidence is that low-level subordinates are saying something that suggests that someone has to have told them her mental condition, that will admit an inference that the supervisor disclosed it. Why is that not the case? Well, I don't know what happened there, because there is nothing in the record as to how that was disclosed. It was certainly not from our client. We are very cautious about releasing HIPAA-related information, I can assure you. So I don't know where that came from, and I don't know if you can make that inference that it came from our client. I don't think you can, because— That's different, though, from that what was disclosed wasn't medical information, which was the district court's, right, that the plaintiff was referred to as crazy, which is not a medical diagnosis. Correct. That's what the district court said. Well, let's assume that if there were evidence of disclosure and what the subordinate said was she's crazy, that—excuse me—that conclusion wouldn't hold, would it? No. Okay. All right. Anything else? No. Thank you. Thank you. Mr. Rose. Thank you, Your Honor. I'd just like to read quickly from Mr. Van Ostrand's affidavit. He states, I asked Dwayne Hambrick, a shift manager, where Ms. Lawson was during the same leave of absence, and he responded that Ms. Lawson was out because she is crazy. Mr. Hambrick also said that Ms. Lawson had a death in the family and had to take leave because she had gone crazy. That's a shift manager. Ms.— All right. Well, you know— Ms. Lawson— It's not clear that that's the disclosure of a medical condition. But Ms. Lawson also testified. She explicitly testified in the record on page A-171 that Rich told us you were out because you were severely depressed. That's a quote from another middle manager. Rich Fabrizio is a higher-level manager. Rich Fabrizio was someone who may have had access, we believe had access, to her medical records. This was explicitly stated during her deposition. We know it came from management. The court, I don't know how, dismissed plaintiff's claims for hostile work environment. The complaint very clearly alleges a claim for hostile work environment. It explicitly says that the actions taken created an extremely hostile work environment in the complaint. That's in paragraph 59 on A-17. So for the court to conclude that plaintiff didn't allege facts or didn't even allege a hostile work environment and therefore not consider any of plaintiff's arguments and dismiss those claims is against the weight of the evidence. And it goes against the federal rules, which require only a short and clear statement of facts. We allege the harassment that occurred. We allege that she complained. We allege that it was ongoing. We allege that it permeated the workplace and happened on a near daily basis from certain individuals. This is enough to have pled a claim for hostile work environment, and the district court held that we didn't at all. I'd like to quickly- Can I just take you back to- Sure. You can see I'm fighting the cold, and the cold is winning. Many people, especially after they experience a death of a loved one, can be depressed without being clinically depressed, as in having a medical condition. So to that extent, it's not clear to me that a worker who says that he was told she was out because she was depressed and she had suffered a death in the family, that that would automatically lead to a conclusion that medical records were disclosed. Why do you think you have enough to defeat summary judgment here? Well, Your Honor, the only thing in the record that shows the plaintiff communicated her mental health status to the defendants were in the documents she submitted in order to take the leave. So because those are the only records that were submitted to say why she's taking this leave of absence, it's the only thing in the record, what else could there have been disseminated except for that specific information? Ms. Lawson wasn't going around telling people. What information in the records do you think was disclosed? Because they reveal much more than just depression. Well, the fact that she was severely depressed, I don't know what level of medical expertise Mr. Fabrizio has to interpret these records, but to draw that she was severely depressed and then take that a step further and say, well, she's crazy. She's out because she's nuts. And then that was picked up on by the subordinates who just mercilessly harassed Ms. Lawson. It was really a terrible situation. I think just very briefly, claimants' wage and hour claims, I think it's important to note that the defendants still to this day have not identified which exemption they're claiming. They list all three, the administrative, executive, and professional. They don't even say which one they're alleging. How could they possibly have proven it? And they didn't plead it as an affirmative defense. They're required to plead an exemption as an affirmative defense, and it was picked up on by the court and just dismissed out of hand. So I don't see how that could possibly stand up on appeal. And finally, plaintiff's constructive discharge claims, the analysis, I do want to note, I don't believe I could find any case where the Second Circuit did hold that a constructive discharge claim can be based in the Americans with Disabilities Act. I think that's a matter of first impression. But that's it. Thank you, Your Honor. All right, we're going to take the case under advisement.